# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### BILLINGS DIVISION

| | |
|---|---|
| JACK R. CLARK, | CV 15-62-BLG-SPW-CSO |
| Plaintiff, | |
| vs. | **FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE** |
| F.T. REYNOLDS CO., a Montana corporation, | |
| Defendant. | |

Plaintiff Jack R. Clark ("Clark") filed this action for declaratory relief and compensatory damages against Defendant F.T. Reynolds Co. ("Reynolds") claiming breach of a commercial lease agreement. *Verified Cmplt for Declaratory and Other Relief and Demand for Jury Trial (ECF No. 1).*[1] Clark invokes the Court's diversity jurisdiction under 28 U.S.C. § 1332. *Id. at 1-2.* Now pending are cross-motions for summary judgment. *See Clark's Mtn. for Summary Judgment Regarding Liability (ECF No. 16) and Reynold's Mtn. for Summary Judgment (ECF No. 20).*

---

[1]"ECF No." refers to the document as numbered in the Court's Electronic Case Files. *See The Bluebook, A Uniform System of Citation, § 10.8.3.* References to page numbers are to those assigned by ECF.

For the reasons set forth below, the Court recommends that Clark's motion be denied, and that Reynold's motion be granted. As noted below, Clark's claim for Reynolds to pay some portion of the expenses for parking lot repairs is not disputed, but the parties continue to dispute the amount owed by Reynolds. Thus, it is further recommended that the parties' dispute concerning the amount Reynolds owes for parking lot repairs be addressed in subsequent proceedings.

## I.  <u>Introduction</u>

Under the lease agreement, Reynolds rented space ("the Premises") since the mid-1970s in a shopping center that Clark now owns in Sidney, Montana. Reynolds used the Premises to house its grocery store. Clark claims that Reynolds breached the lease when it stopped using the Premises as a grocery store and instead opened a new grocery store ("the New Location") elsewhere in Sidney. Reynolds now uses the Premises for storage rather than as a grocery store.

Clark claims that this change is a breach of the lease. He asserts that the breach deprived him of additional rent to which he claims entitlement under the lease, and which is calculated based on the grocery store's net sales. *Id. at 2-4.*

Clark seeks an accounting of net sales at the New Location and payment of rent based on a percentage of those net sales pursuant to the lease. *Id*. And, Clark claims that "Reynolds has not yet paid its pro rata share of parking lot maintenance for needed parking lot repairs." *Id. at 3*.

In his Complaint, Clark seeks:

*Count I* – a declaration of the parties' rights under certain provisions of the lease, *ECF No. 1 at 3*;

*Count II* – an accounting of all net sales used to calculate rent due under the lease, *id*.; and

*Count III* – payment of damages for Reynold's breach of the lease agreement, *id. at 4*.

## II.   <u>Background Facts</u>[2]

On June 25, 1973, Clark's predecessor as landlord, Hughes-Trimble, entered into a 20-year commercial lease with Reynolds, as tenant, for the Premises, a 20,000-square-foot space in what was then known as the Gibson Shopping Center in Sidney, Montana. The

---

[2]The facts stated are undisputed unless otherwise indicated. See Joint Discovery Plan (ECF No. 11 at 4-6) (containing parties' stipulated statement of facts); Clark's Statement of Undisputed Facts (ECF No. 19); Reynolds' Statement of Undisputed Facts (ECF No. 22); Clark's Statement of Disputed Facts (ECF No. 27); and Reynold's Statement of Disputed Facts (ECF No. 29).

structure, which Clark presently owns, is now known as the Richland Shopping Center.

The lease included a provision for the right to extend the lease's term for two successive periods of five years each. By a Lease Extension Agreement dated August 23, 1993, between Clark and Reynolds, the parties extended the lease's term to December 31, 2008. By a Modification of Lease Extension Agreement dated December 12, 2003, between Clark and Reynolds, the parties extended the lease's term to December 31, 2015.[3]

Under the lease, beginning January 1, 2009, Reynolds was to pay Clark as rental for the Premises the sum of $24,000 per annum, payable in monthly installments of $2,000 each, in advance, on or before the 10th day of each calendar month during the term of the lease; or an amount, if greater, equal to the sum during each lease year of one and one-half (1 ½) percent of net sales made on the Premises over and above $1,900,000, in addition to the basic annual rent of $24,000. For

---

[3]Although the documents are located elsewhere in the record, for purposes of the pending motions the Court relied on copies of the lease, the Lease Extension Agreement, and the Modification of Lease Extension Agreement that the parties attached to their Joint Discovery Plan. See ECF No. 11-1, 11-2, and 11-3. The Court refers to the documents collectively as "the lease."

purposes of calculating additional rent based upon net sales made on the Premises, a lease year starts on February 1 of each calendar year and ends on January 31 of the succeeding calendar year.

Until November 18, 2013, Reynolds occupied and utilized the Premises as a retail grocery store known as Reynolds Market, which was formerly known as Reynolds Warehouse Grocery. During the term of the lease, Reynolds Management Group constructed a new building at the New Location in Sidney. After November 18, 2013, Reynolds utilized the New Location for its retail grocery store, still known as Reynolds Market.

Reynolds continues to occupy and utilize the Premises for other purposes. For each month of that occupancy, Reynolds has paid basic rent in the amount of $2,000 per month. No retail sales were made on the Premises after November 17, 2013.

Reynolds has not provided Clark with any summary or disclosure of the amount of net sales after November 17, 2013, from the New Location, but maintains that the lease does not require it to do so. Reynolds will pay its proportionate share of 2015 real property taxes in accordance with the lease's provisions.

There is an additional dispute between Clark and Reynolds regarding what portion of the expenses Reynolds owes for parking lot repairs completed under the proposal from Hardrives Construction, Inc., dated March 23, 2015.

## III. <u>Summary of the Parties' Arguments</u>

Clark argues that he is entitled to summary judgment as a matter of law respecting liability on all of his claims. *Clark's Amended Opening Br. (ECF No. 25) at 11*.[4] He argues that: (1) the lease and amendments contain both specific language and an implied covenant that impose upon Reynolds a duty to operate a retail grocery store on the Premises during the lease's term, *id. at 11-18*; (2) Reynolds breached the lease by not occupying and operating a retail grocery store at the Premises, *id. at 18*; (3) Reynolds' breach deprived Clark of rent payments that were to be calculated based on a percentage of net sales from Reynold's grocery store operations at the Premises, and he is thus entitled to an accounting and percentage of net sales from the New

<hr>

[4]Subsequent to filing his original supporting brief (ECF No. 17), Clark filed a stipulation (ECF No. 23), which the Court ratified by Order (ECF No. 24), allowing him to file an amended supporting brief that includes a previously omitted table of contents, table of authority, and certificate of compliance.

Location, *id. at 18-23*; (4) Reynolds has failed to pay its pro rata share of repairs made to the parking lot during the lease's term, *id. at 24*; and (5) Clark is entitled to his costs and attorneys' fees in bringing this action, *id. at 24-25*.

Reynolds argues that it is entitled to summary judgment on all of Clark's claims against it. *Reynolds' Opening Br. (ECF No. 21) at 13*. Reynolds argues that: (1) Clark's breach of contract claim in Count III fails because the lease contains no express provision requiring Reynolds to operate a grocery store on the Premises, but rather only requires it to occupy and use the Premises in compliance with all applicable laws, ordinances, and regulations, which it has done, *id. at 13-20*; (2) the lease contains no implied covenant requiring Reynolds to use the Premises as a grocery store, *id. at 20-23*; (3) Reynolds did not breach the lease, as Clark alleges, because it was not required to account for and pay a percentage of net sales earned at its grocery store at the New Location, *id. at 24-25*; (4) because it did not breach the lease, Reynolds is entitled to summary judgment on Counts I and II of Clark's Complaint, which counts seek a declaratory judgment and an "accounting and turnover" of a percentage of net sales at the Premises,

*id. at 25-27*; (5) Clark is not entitled to the amount he seeks in connection with parking lot repairs because: (a) his Complaint makes no mention of Reynolds breaching the lease respecting parking lot issues, so it is not properly before the Court, *Reynold's Resp. Br. (ECF No. 28) at 17-18*; (b) Clark was not entitled to make unilateral decisions respecting maintenance to or repair of the parking lot, *id. at 18-19*; © Reynolds was neither consulted nor agreed to the scope of work proposed for the parking lot, *id. at 19*; (d) to the extent Clark had any discretion respecting the parking lot, it was only for expenditures related to maintenance, not to repairs, *id.*; and (e) Reynolds is willing to pay its share of maintenance and repairs, but there exist discrepancies respecting the amount of work completed, the contract sum sought, and what proportional amount is appropriate because of the short duration of Reynolds' lease term remaining when the work was done, all of which will have to be sorted out in discovery before an appropriate amount owed can be determined, *id. at 19-21*; and (6) Clark is not entitled to attorneys' fees because Reynolds did not breach the lease, *id. at 21*.

## IV.  Applicable Law

### A.  Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Material facts are those which may affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable fact-finder to return a verdict for the nonmoving party.  *Id.*  If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue of fact exists.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

When parties file cross-motions for summary judgment, as here, the Court must consider each motion on its own merits. *Fair Housing Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). The fact that both parties have moved for summary judgment does not vitiate the Court's responsibility to determine whether disputed issues of material fact are present. *Id.*

**B.  Application of Montana Law**

As noted, the Court's jurisdiction over this action is based on diversity of citizenship. Thus, the Court must apply the substantive law of Montana, the forum state. *In re County of Orange*, 784 F.3d 520, 523-24 (9th Cir. 2015) ("Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law.") (citation omitted); *see also Medical Laboratory Mgmt. Consultants v. American Broadcasting Companies, Inc.*, 306 F.3d 806, 812 (9th Cir. 2002).

In actions based on diversity jurisdiction, the federal court "is to approximate state law as closely as possible in order to make sure that the vindication of the state right is without discrimination because of the federal forum." *Gee v. Tenneco, Inc.*, 615 F.2d 857, 861 (9th Cir.

1980). Federal courts "are bound by the pronouncements of the state's highest court on applicable state law." *Appling v. State Farm Mutual Auto. Ins. Co.*, 340 F.3d 769, 778 (9th Cir. 2003) (citation omitted). But when an issue of state law arises and "the state's highest court has not adjudicated the issue, a federal court must make a reasonable determination of the result the highest state court would reach if it were deciding the case." *Medical Laboratory Mgmt. Consultants*, 306 F.3d at 812 (citations omitted). In doing so, the federal court must "look to existing state law without predicting potential changes in that law." *Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 939 (9th Cir. 2001) (citation omitted).

## C. <u>Contract Interpretation Under Montana Law</u>

"The interpretation and construction of a contract is a question of law." *Krajacich v. Great Falls Clinic, LLP*, 276 P.3d 922, ¶ 13 (Mont. 2012) (*citing Corporate Air v. Edwards Jet Ctr., Mont., Inc.*, 190 P.3d 1111, ¶ 30 (Mont. 2008)). "A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." *Id.* (*citing Corporate Air, ¶30* (*quoting* MCA § 28-3-301)). "When a contract is in

writing, the parties' intentions are to be determined from the writing alone, if possible." *Id.* (*citing Corporate Air,  ¶30* (*quoting* MCA § 28-3-303)).

"The whole of a contract is to be taken together so as to give effect to every part if reasonably practicable, each clause helping to interpret the other." *Corporate Air, ¶ 30* (*quoting* MCA § 28-3-202).  "The language of a contract is to govern its interpretation if the language is clear and explicit and does not involve an absurdity." *Id.* (*quoting* MCA § 28-3-401).  "Evidence of the circumstances under which a contract was made and the matter to which it relates may be considered, but such evidence is not admissible to add to, vary, or contradict the terms of the contract." *Id.* (citation omitted).  "Where the language of a contract is unambiguous – i.e., reasonably susceptible to only one interpretation – the duty of the court is to apply the language as written."   *Corporate Air*, 190 P.3d at ¶ 32 (*citing Ophus v. Fritz*, 11 P.3d 1192, ¶ 23 (Mont. 2000)).

## V.    **Discussion**

As framed by the parties, two principal issues are before the Court for ruling.  First, the Court must determine whether the lease

imposes a duty or obligation upon Reynolds, either expressly or through an implied covenant, to operate a grocery store on the Premises during the lease's term.  Intertwined with this issue is whether the lease requires, either expressly or through an implied covenant, that Reynolds pay as rent for the Premises a percentage of its net sales proceeds from operation of its grocery store, whether at the Premises or at the New Location.

Second, the Court must determine whether Clark is entitled, under the lease, to the amount he seeks for parking lot repairs made during the term of the lease with Reynolds.  The Court addresses these issues separately below.

## A.     <u>Use of the Leased Premises and Calculation of Rent</u>

For the reasons that follow, the Court concludes that there is neither an express obligation nor an implied covenant requiring Reynolds to operate a grocery store on the Premises under the lease. And, the lease contains neither express language nor an implied covenant that requires Reynolds to provide Clark with an accounting of its net sales at the New Location or to pay Clark rent calculated from a percentage of net sales at the New Location.

### 1.  No Express Terms Imposing a Use Duty

The Court concludes that the lease is unambiguous and contains no express terms or provisions requiring Reynolds to use the Premises as a retail grocery store.  *See Rothe v. Revco D.S., Inc.*, 148 F.3d 672, 674 (7th Cir. 1998) (noting "[t]he problem with [the landlord's] position is simple – there's nothing in the lease that expressly requires the lessee to continue to operate the store and thus generate sales that would increase the take for the lessor.").  The only provision in the lease that expressly describes the manner in which Reynolds agreed to use the Premises is as follows:

> ARTICLE IV.  OPERATION AND USE OF PREMISES
>
> Section 1.  Business Use.  Tenant shall promptly comply with all laws, ordinances and regulations affecting the premises and promulgated by duly constituted governmental authority affecting the cleanliness, safety, use and occupation of the premises.

*ECF No. 11-1 at 6.*  Neither this section nor the other sections of Article IV impose upon Reynolds any obligation or duty to operate the Premises as a retail grocery store.  Rather, they limit Reynolds' use only to the extent that Reynolds must comply with all laws and must

not abuse the Premises or interfere with other tenants' businesses or their rights.  *Id.*

To the extent Clark argues that other lease provisions impose upon Reynolds a duty or obligation to operate a retail grocery store at the Premises, the Court is not persuaded.  Clark primarily relies on the following preliminary language in the lease to support his argument that the lease language expressly establishes the duty: "Landlord does hereby lease to Tenant and Tenant does hereby hire and take from Landlord store space containing approximately 20,000 square feet . . . ." *ECF No. 11-1 at 2.*  Clark argues that this reference to "store space" imposes a duty upon Reynolds to operate a retail grocery store in the Premises rather than use it for storage space.  *Clark's Resp. Br. (ECF No. 26) at 7, 12-13.*

The Court concludes that use of the phrase "store space" in describing the Premises in the preliminary section of the lease merely describes the space to be leased and not the use to which it must be put.  In *Turman v. Safeway Stores, Inc.*, 317 P.2d 302, 306 (Mont. 1957), the Montana Supreme Court, quoting 2 A.L.R.2d 1150, described the legal effect of this type of space description as follows:

[A]ccording to the weight of authority, words used in a lease which are merely descriptive of the character of the premises, although indicating a particular use, are not to be construed as restrictions upon the lessee confining his right to use the premises to the particular use which such words may suggest. . . . [P]rovisions which authorize the use of the premises for a specific purpose or which merely give consent to a particular use of the property, are generally regarded as permissive rather than restrictive in nature, and do not therefore, in the absence of other limiting language, restrict the lessee to the use specified in the lease.

Under this authority, the Court cannot conclude from use of the mere description "store space" that the lease restricted Reynolds to use the Premises only as a retail grocery store.

Clark also argues that other words and phrases contained in the terms and provisions in the lease expressly impose upon Reynolds the duty or obligation to operate a retail grocery store at the Premises. He lists such examples as follows:

- reference to 20,000 square feet of leased space in a "shopping center"
- page 2, ¶ 2 discussed a date for which "goods of service are offered for sale from said premises."
- Page 3, Article 2 refers to "net sales."
- Page 4, ¶ 1 refers to "store sizes"; "tenant store premises"
- Page 4, Section 4 refers to landlord providing parking or service areas for ". . . loading by its customers, employees and suppliers and for the exercise of so-called "truckload" sales, tent sales and other similar promotional activities."

- Page 5, Section 6 refers to landlord's rights to temporarily close portions of the common areas to the tenants' "customers"
- Page 7, Article VIII, Section 1, refers to ". . . business conducted by tenant in the leased premises . . ."
- Page 9, Section 4 refers to tenant's right to ". . . discontinue its business in the leased premises. . ." during any period of reconstruction, restoration or repair of the leased premises.
- Page 10, Article XII provides that landlord shall not be entitled to any portion of an eminent domain award made to the tenant for "loss of business."
- Page 14, Article XXI provides a non-competition clause for a "retail food store."

*ECF No. 26 at 12-13* (emphasis omitted).

For the reasons discussed above, the Court rejects Clark's argument that the above references somehow impose upon Reynolds a duty or obligation to operate a retail grocery store at the Premises. Several of the above references refer generally to the nature of the larger structure or complex in which the Premises is contained – a shopping center – or to the general purpose to which the Premises or other space within the complex may be put – business. They do not impose restrictions regarding the specific use to which the Premises must be put.

Also, several of the references imposing restrictions on use of space relate to other portions of the shopping center owned by the

landlord, such as common areas in the shopping center, and do not relate directly to the Premises. And, none of the foregoing references are contained in Article IV of the lease, which governs operation and use of the Premises leased by Reynolds. Finally, none of the references precludes or limits the type of use to which the Premises could be put other than to limit the amount of floor area that Reynolds could use when competing with Gibson's Discount, a store within the complex.

For all of the foregoing reasons, the Court concludes that the lease does not contain any language that expressly imposes upon Reynolds the duty or obligation to use the Premises only as a retail grocery store.

### 2. No Implied Covenant in the Lease that Reynolds Use the Premises as a Retail Grocery Store

Clark next argues that the lease's rent provision supports the finding of an implied covenant that imposes a duty upon Reynolds to operate a retail grocery store because rent is based on proceeds derived from operation of the grocery store. *ECF No. 26 at 8-12.* Respecting rent, the lease provides:

ARTICLE II.  RENT

Section 1.  Tenant agrees to pay to Landlord, at such place
or places as Landlord shall designate from time to time in
writing, rent for said premises as follows:

(a) Lessee, in consideration of the premises herein set forth,
agrees to pay to Lessor, by check payable to Lessor sent to
its above address, as rental for the above described
premises, the sum of Twenty-Four Thousand Dollars and
no/100 ($24,000.00) per annum, payable in monthly
installments of Two Thousand and no/100 ($2000.00) each,
in advance, on or before the tenth day of each calendar
month during the term hereof; or an amount, if greater,
equal to the sum, during each lease year, of One and one-
half (1 ½) percent of net sales made on the leased premises
over and above One Million Nine Hundred Thousand Dollars
($1,900,000.00), in addition to the basic annual rent of
Twenty-Four Thousand Dollars ($24,000.00).

*ECF No. 11-1 at 4* (underlining omitted).

Clark argues that this provision imposes upon Reynolds an

implied obligation to operate a retail grocery store on the Premises to

fulfill Reynolds' requirement to pay as part of rent a percentage of net

sales from Reynolds' grocery store.  For support, Clark relies upon the

Montana Supreme Court's decision in *Turman*, *supra*.  He concedes

that the supreme court in *Turman* "did not address the potential

existence of implied obligations under a percentage commercial lease

based upon net sales."  *ECF No. 26 at 8* (emphasis omitted).  But, he

argues, the case is significant because the supreme court, in reaching its decision, relied on American Jurisprudence, the legal encyclopedia, for guidance in determining whether implied covenants exist in a commercial lease. *Id. at 8-12.*

Thus, Clark also relies on a part of American Jurisprudence not mentioned in *Turman* – 49 Am.Jur. 2d Landlord and Tenant, § 391 – to support his argument. He maintains that § 391 discusses situations, like the one in this case, in which rent is a minimum amount plus a percentage of income. In such situations, Clark argues, American Jurisprudence finds an implied covenant to operate a retail business if the minimum rent is not substantial. *ECF No. 26 at 8-12.* The Court is not persuaded by this argument for the following reasons.

First, the Court begins with the general proposition, recognized in Montana, that "implied covenants are not favored in the law." *Turman*, 317 P.2d at 306 (*quoting* 14 AM. JUR., Covenants, Conditions and Restrictions, § 14, p. 490). And, although implied covenants may arise in a lease agreement, the circumstances under which they may arise are limited:

> [I]mplied covenants on the part of a lessor or a lessee may arise when there is a satisfactory basis in the express

contract of the parties which makes it necessary to imply
certain duties and obligations in order to effect the purposes
of the parties to the contract made, but the covenants can be
justified only upon the ground of legal necessity arising from
the terms of a contract or the substance thereof.

*Id.* (*quoting* 32 AM. JUR., Landlord and Tenant, § 143, p. 145).

Here, as noted above, the lease is unambiguous and contains no

express terms imposing upon Reynolds a duty or obligation to use the

Premises only as a retail grocery store.  Rather, the lease permits

Reynolds to use the Premises for any lawful purpose that does not

interfere with other tenants' use of their spaces in the complex.  Thus,

the Court finds no "satisfactory basis in the express contract" making it

necessary to imply duties or obligations to achieve the parties' purpose

in entering the lease.  Consequently, there can be no finding an implied

covenant in the lease between the parties.

Second, even if such a "satisfactory basis" did exist, which it does

not, Clark has identified no legal necessity arising from the lease's

terms or substance to justify implying a covenant that Reynolds must

operate a retail grocery store in the Premises.  Clark's argument that it

is necessary to imply such a covenant so that he can receive rent

derived from a percentage of net sales is unpersuasive.  The lease's rent

provision does not provide for rent to be calculated solely based on net sales made on the leased premises.  Rather, it expressly provides for a monthly minimum amount, while allowing an additional annual amount, "if greater," calculated as a percentage of net sales in excess of $1.9 million.  *ECF No. 11-1 at 4.*  That additional annual rent be paid by Reynolds to Clark is not a legal necessity.  Rather, it is an alternative formula for calculating rent based on the profitability of sales Reynolds may make on the leased Premises.  Considered in light of the long history of this lease, Clark's argument that the basic rent has always been insubstantial is unpersuasive.  Clark has provided no other legal necessity arising from the terms of the lease or its substance that would permit the existence of an implied covenant.  In light of these conclusions, the Court finds it unnecessary to further address Clark's reliance on 49 Am.Jur.2d Landlord and Tenant, § 391.

Third, the Court notes that Clark has failed to cite applicable, controlling authority to support his argument that an implied covenant must be found in the lease imposing on Reynolds a duty to operate a retail grocery store.   As noted above, in Montana, "implied covenants are not favored in the law."  *Turman*, 317 P.2d at 306 (citation

omitted). The cases upon which Clark relies were not decided based on Montana law.

And, unlike the case at hand, which does not involve express provisions imposing upon Reynolds a duty to operate a retail grocery store in the Premises, the cited cases generally involved agreements containing express provisions imposing upon lessees a duty to use premises for particular purposes or during continuous operations. *See, e.g., First Am. Bank & Trust Co. v. Safeway Stores, Inc.*, 729 P.2d 938, 940 (Ariz. Ct. App. 1986) (under Arizona law, finding express provisions in lease giving rise to parties' clear contemplation that lessee would engage in continuous operations); *Simhawk Corp. v. Egler*, 202 N.E.2d 49, 52 (Ill. Ct. App. 1964) (under Illinois law, finding lease contained express language requiring continued use of premises as retail shoe store); *China Doll Restaurant, Inc. v. Schweiger*, 580 P.2d 776, 779-80 (Ariz. Ct. App. 1978) (lease contained express provision that lessee would use premises to operate restaurant and for no other purpose); *Stein v. Spainhour*, 521 N.E.2d 641, 642-44 (Ill. Ct. App. 1988) (lease expressly provided for use of premises for sale of Dairy Queen confections); *EMRO Marketing Co. v. Plemmons*, 855 F.2d 528, 529 (8th

Cir. 1988) (applying Missouri law, finding lease expressly provided for use of premises as Nickerson Farms Store for sale of products customarily sold by such stores); *Ayres Jewelry Co. v. O&S Building*, 419 P.2d 628, 629 (Wyo. 1966) (under Wyoming law, finding lease expressly provided for use of premises as jewelry store and for no other purpose); *Lagrew v. Hooks-SupeRx, Inc.*, 905 F.Supp. 401, 405 (E.D. Ken. 1995) (applying Kentucky law, finding implied covenant only where there exists no express provision on subject in parties' agreement); *BVT Lebanon Shopping Center, Ltd. v. Wal-Mart Stores, Inc.*, 48 S.W.3d 132, 134 (Tenn. 2001) (Tennessee Supreme Court summarily affirmed, without discussion or analysis, lower court conclusion that there existed implied covenant of continuous occupancy in lease); and *Pequot Spring Water Co. v. Brunelle*, 698 A.2d 920, 923-24 (Conn. Ct. App. 1997) (applying six factors to determine whether covenant to remain in business will be implied).  As such, the Court finds that these cases lack persuasive value.

For all of the foregoing reasons, the Court concludes that the lease does not contain an implied covenant that imposes upon Reynolds a duty or obligation to operate a retail grocery store in the Premises.

### 3. Reynolds is Entitled to Partial Summary Judgment Respecting Clark's Breach of Contract Claim to the Extent it Alleges Breach of Express or Implied Covenant to Use Premises as Retail Grocery Store and to Base Rent on Net Sales

In light of the foregoing, the Court concludes that Reynolds did not breach the lease by discontinuing grocery store operations in the Premises. The Court further concludes that Reynolds did not breach the lease by paying rent that does not include a percentage of net sales made in the leased Premises. As noted, it is undisputed that no such sales occurred in the leased Premises during the relevant period. Thus, Reynolds is entitled to summary judgment on: (1) Clark's claim for an accounting of all net sales used to calculate rent; and (2) Clark's claim for damages for Reynold's breach of the lease to the extent he claims that Reynold's breached the lease by discontinuing grocery store operations in the leased Premises.

### B. Parking Lot Repairs and Maintenance

As noted above, Clark also claims that Reynolds has failed to pay its pro rata share of parking lot maintenance for parking lot repairs at the shopping center. *ECF No. 1 at 3; ECF No. 25 at 24.*

Article III, Section 5, of the lease provides, in relevant part:

Operation and maintenance.  Tenant agrees to manage, operate, repair and maintain during the term of this Lease and any renewal thereof all parking areas . . . in the Center, the same to be pro-rated to the Tenant on the basis of the Tenant's square footage on this Lease as compared to the total building square footage exclusive of canopy, and keep the same in a clean and sightly condition at Tenant's expense.  The manner in which such areas and facilities shall be maintained and the expenditures therefor shall be at the sole discretion of Landlord who shall have the right to adopt and promulgate reasonable rules and regulations from time to time with respect to the leases premises, parking areas and other common areas . . . .

*ECF No. 11-1 at 5.*

Reynolds "does not dispute liability for payment of some portion of the expenses for parking lot repairs." *ECF No. 28 at 21.*  It only disputes the amount Clark requests that the Court order it to pay.  *Id.*

Because Reynolds concedes that it must pay some portion of the expenses for parking lot repair, there is no issue concerning liability on this claim.   Rather, the dispute concerns the amount owed, which is not before the Court on the pending cross motions for summary judgment.  Thus, to the extent Clark seeks summary judgment respecting the amount owed by Reynolds for parking lot repairs, the Court concludes that the motion should be denied as premature.

### C. **Attorney's Fees**

In light of the foregoing, the parties' requests for attorney's fees are premature and summary judgment in either party's favor respecting fees should be denied.

## VI. <u>Conclusion</u>

Based on the foregoing, IT IS RECOMMENDED that Clark's motion for summary judgment regarding liability (*ECF No. 16*) be DENIED and that Reynolds' motion for summary judgment on Counts I and II (*ECF No. 20*) be GRANTED.

As conceded by Reynolds, Clark is entitled to payment by Reynolds of a portion of the expenses incurred by Clark for parking lot repairs. Therefore, Count III should remain pending for the sole purpose of determining expenses that Reynolds must pay for parking lot repairs. The amount of such portion of the expenses will need to be determined in subsequent proceedings.

NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a copy of the Findings and Recommendation of United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and

recommendation must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after entry hereof, or objection is waived. *See Local Rule 72.3.*

DATED this 30th day of December, 2015.

/S/ Carolyn S. Ostby
United States Magistrate Judge